## LUTHER HENRY *v*. PATRICK MARTIN.

### *Contract. Abandonment. Recision. Promissory Note.*

The plaintiff deeded a farm to F. and took a mortgage back, and subsequently, having heard that F., who had not paid for the farm, desired to quit claim back, sold the same to the defendant, and agreed to deed upon payment of the defendant's notes given for the same. Shortly after the contract between the plaintiff and defendant, the latter notified the plaintiff that he should give up the land and abandon the contract as the plaintiff had no title, and requested the plaintiff to give up his notes. The plaintiff refused to rescind, offering a good guaranty that the defendant should have a good deed; but afterwards, having received a quit claim from F., rented the place one year and occupied it another year and

then sold it. *Held,* in an action to recover on one of the defendant's notes, that there was a practical abandonment of the contract by the plaintiff, and an acceptance of the recision offered by the defendant, which left the note without consideration.

ASSUMPSIT. Plea, the general issue, and trial by the court at the March Term, 1866, PECK, J. presiding.

It appeared that in 1860, the plaintiff sold and conveyed a small farm to one Farr for $750. received $50, of it down, and took notes on interest and a mortgage back on the premises for $700. none of which were ever paid. December 8th, 1862, the plaintiff entered into a written contract with the defendant by which it was agreed that in consideration of the defendant's notes, seven in number, payable in two, three, four, five, six and seven years from date, the plaintiff was to deed said farm to the defendant, the defendant to rebuild the house which was burned in 1862, and perform other conditions. The defendant never having paid anything on said notes, nor anything towards the purchase money, this action was brought to recover one of said notes.

The evidence on the part of the defendant showed that he went on to the place one day, a few days after he made the contract, and cut twelve logs for the purpose of building a house on the place, and in going home that night he saw the father of said Farr, who told him his son had a deed of the place from Henry, and owned it, and that Henry had no title he could give, and that he, the defendant, went immediately to Henry and told him he should give up and abandon the land and the contract, and requested him, the plaintiff, to give up the notes, and that Henry refused,· but offered to get a good man to guaranty he should have a good deed, but he refused to take any such security—that this was not more than ten days after he made the contract, and that he told Henry that he should not go on there and build a house to live in, and be subject to be driven off by Farr, and that his wife was also unwilling to go there on account of his, Henry's, not having the title, as they might be driven off after they got their house built. This the court found was substantially what he said about his wife not being willing to go there. The defendant never went on to the land after that, but from that time

abandoned it and repudiated the contract, which from that time was known to the plaintiff.

The plaintiff refused to rescind. The plaintiff's evidence tended to show that he told the defendant when he made the contract how the title was situated ; that Farr after he bought the place moved on to it, and occupied one year, and moved to Rutland, and that Farr's father told him, the plaintiff, before he sold to the defendant, that his son sent word to him, the plaintiff, that he should not keep the place, that he would give it up and quit claim back to him. It appeared from the plaintiff's evidence that Farr quit claimed said farm to the plaintiff in February, 1863, and that the plaintiff rented it that year, and occupied it himself the next year, and in the fall of 1864 exchanged it with one Ober for another place, and the plaintiff showed what he realized from said farm ; that after the defendant gave him the notice he, the plaintiff, did what he could to sell it, and was not able to find an opportunity until he exchanged it as above stated, and showed what his loss was by reason of the defendant's failure to take the farm according to the contract.

The defendant's evidence tended to show that he, the defendant, was not informed, at the time of the contract, of the fact that Farr had a deed and had given a mortgage back, and that the first he knew of it was when Farr's father told him, and that until then he supposed the plaintiff had a good, clear title. The court were unable to find such a balance of testimony on this point as to be warranted in finding that the defendant fully understood the state of the title when he made the contract, as he appeared to be quite inexperenced and ignorant of business transactions of this kind,—although the court found that there was no intention to mislead the defendant as to his title, or to give him ultimately anything short of a good title, Henry expecting to get a quit claim from Farr before the time for executing the deed to the defendant. The defendant objected to the plaintiff's evidence as to his informing the defendant of the true state of the title at the time of the contract, but the court admitted it subject to the objection. The court found that the cutting of the twelve logs was no damage or injury to the plaintiff. The court did not find as matter of fact that the plaintiff ever in fact assented to rescind the

contract or give it up, but found that he always, after the defendant gave him the notice, intended to hold the defendant for what damage or loss he sustained by taking the farm back.

The defendant's counsel, among other things, insisted that the defendant had a right to rescind and repudiate the contract on account of the plaintiff's want of title, and whether he had the right or not, as he did so, so far as in his power, and notified the plaintiff to that effect, the plaintiff's subsequent acts, in renting, occupying, and selling and conveying the premises, operated as a complete rescinding and termination of the contract, so that the plaintiff cannot recover.

The court rendered judgment for the defendant, to which the plaintiff excepted.

*Henry & Palmer* and *Dillingham & Durant*, for the plaintiff.

Henry had a right to contract. He was a mortgagee. The condition had long been broken. 19 Vt. 322. Martin broke the contract first as far as he was able. It follows that if Henry could contract that he may sue for a breach of the contract. Admitting for the sake of the argument that Henry could not contract, when he offered to get a good man to give a guaranty to Martin that he, Henry, would execute his contract, we do not see how Martin can complain, much less break his contract.

*W. G. Ferrin*, for the defendant.

I. The principle is well settled in this state, that if one makes a tender of a specific article or money, to which he attaches a condition and the party to whom the offer or tender is made accepts the thing tendered and *treats it as his own*, that he is bound by the condition attached to the offer or tender. In the case at bar the defendant told the plaintiff he should give up the land and the contract and demanded his notes, and thereupon did abandon the land, and the plaintiff took possession and sold the premises *as his own*, and he must now be bound to the conditions which the defendant attached to his offer or tender. *Fletcher* v. *Cole*, 23 Vt. 119 ; *McGlynn* v. *Billings*, 16 Vt. 329 ; *McDaniels* v. *Lapham et al.*, 21 Vt. 222.

II. If the plaintiff desired to collect the purchase money, he should have kept himself in a condition so that he could have *fulfilled the contract on his part.* But having sold the land he could not afterwards collect the notes. *Arbuckle* v. *Hawks,* 20 Vt. 538 and case cited; *Porter* v. *Vaughn,* 26 Vt. 624.

The opinion of the court was delivered by

BARRETT, J. The renting of the farm by the plaintiff in the spring of 1863, and the use of it in 1864, and the disposal of it to Ober in November, 1864, must be regarded as a practical abandonment of the contract by the plaintiff—and, taken in connection with the state of the title at the time of the contract, December 8th, 1862, and the notice of recision a few days after by the defendant, and the abandonment of the place by the defendant, it must operate an acceptance of the recision ·offered by the defendant, and take effect as of that time, and thus leave the note in suit without any consideration, This construction put on what was done renders any discussion of other aspects of case needless.

Judgment affirmed.